# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

TAM Q. LE                                                    CIVIL ACTION

**VERSUS**                                              NO. 19-9597

**DARREL VANNOY, WARDEN**                    SECTION: "H"(3)

## REPORT AND RECOMMENDATION

Petitioner, Tan. Q. Le, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

Le is a state prisoner incarcerated at the Louisiana State Penitentiary, in Angola, Louisiana. On January 7, 2011, Le was charged by bill of indictment in the Parish of St. Tammany with two counts of aggravated rape in violation of La. Rev. Stat. § 14:42.[1] Following a three day trial, the jury found Le guilty as charged.[2] On November 28, 2012, the trial court sentenced Le to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence.[3]

On November 4, 2013, the Louisiana First Circuit affirmed Le's conviction and sentence.[4] On May 23, 2014, the Louisiana Supreme Court denied Le's related writ application without reasons.[5]

On May 22, 2015, Le filed a counseled application for post conviction relief.[6] On April 6, 2017, Le filed a supplemental memorandum.[7] On May 4, 2017, the state district court denied Le's

---

[1] State Rec. Vol. 1 of 9, Bill of Indictment, 1/7/11.
[2] State Rec. Vol. 1 of 9, Trial Minutes, 10/29/12; Trial Minutes, 10/30/12; Trial Minutes, 10/31/12; Verdicts, 10/31/12; State Rec. Vol. 2 of 9, Trial Transcript, 10/29/12; State Rec. Vol. 3 of 9, Trial Transcript, 10/30/12; Trial Transcript, 10/31/12.
[3] State Rec. Vol. 1 of 9, Sentencing Minutes, 11/28/12.
[4] State v. Le, No. 2013 KA 0611, 2013 WL 5935677 (La. App. 1st Cir. Nov. 4, 2013); State Rec. Vol. 6 of 9.
[5] State v. Le, 140 So. 3d 724 (La. 2014); State Rec. Vol. 9 of 9.
[6] State Rec. Vol. 6 of 9, Application for Post-Conviction Relief, 5/22/15.
[7] State Rec. Vol. 6 of 9, Supplemental Memorandum in Support of Application for Post-Conviction Relief, 4/6/17.

application as supplemented.[8]  On September 5, 2017, the Louisiana First Circuit denied Le's writ application because he failed to provide the court with a copy of the trial transcript.[9]  On December 7, 2017, the Louisiana First Circuit denied Le's subsequent writ application without reasons.[10]  On February 18, 2019, the Louisiana Supreme Court found Le failed to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and denied his related writ application.[11]  On May 24, 2021, the United States Supreme Court denied Le's petition for writ of certiorari.[12]

In the interim, on April 22, 2019, Le filed the instant federal application seeking habeas corpus relief raising the following claims: (1) the trial court erred in allowing opinion testimony; (2) the trial court erred in admitting "other crimes" evidence and in failing to provide a limiting instruction to the jury; (3) the trial court erred in providing an Allen charge when the jury was deadlocked and forcing it to deliberate another three hours of the evening of Halloween; (4) the non-unanimous jury verdict is unconstitutional; (5) ineffective assistance of counsel in failing to object to opinion evidence, request a Daubert hearing, and request a limiting instruciton.[13]

The state has filed a response conceding that the application is timely.  The state asserts that Le's first claim alleging that the trial court erred in allowing opinion testimony is procedurally defaulted.[14]  Alternatively, the state contends that Le's first claim, as well as his second claim relating to the admission of "other crimes" evidence, are based upon state law and are not

---

[8] State Rec. Vol. 6 of 9, Reasons for Denying Application and Supplemental Application for Post-Conviction Relief, 5/4/17.
[9] State v. Le, No. 2017 KW 0851, 2017 WL 3923680 (La. App. 1st Cir. Sept. 5, 2017); State Rec. Vol. 7 of 9.
[10] State v. Le, No. 2017 KW 1354, 2017 WL 6055438 (La. App. 1st Cir. Dec. 7, 2017); State Rec. Vol. 8 of 9.
[11] State v. Le, 263 So. 3d 422 (La. 2019); State Rec. Vol. 9 of 9.
[12] Le v. Louisiana, 141 S. Ct. 2667 (2021).
[13] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Le declared that he placed his federal application in the prison mailing system on April 22, 2019.  Rec. Doc. 1, p. 10.
[14] Rec. Doc. 20, p.p. 8-9.

cognizable on habeas review.[15]  It asserts that the remaining claims are meritless.[16]  Le filed a traverse claiming ineffective assistance of counsel as cause for the procedural bar of his first claim, and reiterating his arguments to claims one, four and five.[17]  Le concedes that his second claim was not federalized before the state courts and that he is not entitled to relief as to that claim.[18]  He similarly concedes that he is not entitled to relief as to his third claim.[19]

### **Facts**

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> The victim of count one, N.N.V., was twelve years old at the time of her testimony at trial on October 30, 2012.  She indicated that when her mother was in Vietnam, the defendant, her stepfather, tried "to put his private part into mine."  She stated the incident happened after she fell asleep while watching a movie in her mother's room.  According to N.N.V., when she woke up during the night, her shorts "were gone," and the defendant was on top of her.  She picked up her shorts and ran to her room.

> The State also played a recording of the February 22, 2011 interview of N.N.V.  N.N.V. discussed the incident she had testified about and used sketches of an adult male and a female child to indicate the defendant had tried to put his penis in her vagina.  She stated that incident occurred when she was eight or nine years old.  He told N.N.V. not to tell her mother what he had done.

> The victim of count two, N.D.V., testified her date of birth was October 18, 2000.  She indicated the defendant licked her vagina while her mother was in Vietnam.  She also indicated the defendant had put his hand in her vagina.  She stated the incidents occurred when she was sleeping with the defendant.

> The State also played a recording of the February 22, 2011 interview of N.D.V.  N.D.V. used a sketch of a female child to indicate the defendant had licked her vagina.  She stated that when she was eight or nine years old, the defendant had called her into her mother's room and told her to lie on the bed.  He then took her pants and underwear off, pulled her vaginal lips apart, and licked her vagina.

---

[15] Id., at pp. 9-10.
[16] Id.
[17] Rec. Doc. 21.
[18] Id., at p. 3.
[19] Id., at p. 14.

N.D.V. stated the incidents involving the defendant putting his hand into her pants occurred in the living room while her mother was using the computer in her room. In regard to those incidents, N.D.V. stated that, on two or three occasions, the defendant put his hand in her pants and touched or rubbed her vagina after telling her to sit in his lap.

The mother of the victims testified that she had been married to the defendant and had lived with him in Slidell in 2008 and 2009. They had one child together (a son). They separated on January 15, 2009, and divorced on December 13, 2010. On January 15, 2009, she returned from Vietnam, told the defendant she had an affair while there, and she no longer wanted to stay with him. She did not learn of the victims' allegations against the defendant until she was contacted by their school counselor on February 8, 2011. At that time, she was married to someone other than the defendant, and had a son with her new husband. She denied "put[ting] [the victims] up to lying about [the defendant]."

The defendant testified he had never committed any crime in his life and denied molesting the victims. He indicated the victims' mother went to Vietnam between December of 2008 and January of 2009 to get an "extra facial license." He claimed their relationship deteriorated, because she kept talking to the man with whom she had an affair in Vietnam. He stated she was arrested for assaulting him and told him, "I am going to get you when everything done."[20]

## I.     Claim 1 – Opinion Evidence

In his first claim, Le asserts that the state trial court erred in allowing Detective Nicaud to offer opinion evidence concerning the credibility of the victims and Le. The state argues that this claim is procedurally barred from federal review. The state is correct.

The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

---

[20] Le, 2013 WL 5935677, at *1-2; State Rec. Vol. 6 of 9.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, there is no question that Le's claim was denied on state procedural grounds on direct appeal.  In the last reasoned state court opinion addressing his claim, the Louisiana First Circuit held:

## IMPROPER TESTIMONY

In assignment of error number 1, the defendant argues the trial court erred in allowing Slidell Police Department Detective Brian Nicaud to "more or less" provide an expert opinion concerning the veracity of the victims, based on his years of experience.  He argues that Detective Nicaud improperly gave opinion testimony concerning: the mother's demeanor being consistent with a person receiving "devastating news"; Vietnamese culture frowning on reporting these kinds of cases; believing the victims had provided consistent testimony and had given "100% truth"; and, although the defendant denied culpability, the defendant's statement confirming Detective Nicaud's belief that an arrest was justified.

La. C.E. art. 702 addresses the admissibility of expert testimony and provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Notably, the Louisiana Supreme Court has placed limitations on this codal provision in that, "[e]xpert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men."  State v. Young, 09–1177, p. 8 (La.4/5/10), 35 So.3d 1042, 1046–47, cert. denied, U.S., —— 131 —— —, S.Ct. 597, —— U.S. ——, 131 S.Ct. 597, 178 L.Ed.2d 434 (2010).

Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact.  However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.  La. C.E. art. 704. Additionally, expert assessment of witness credibility is improper.  State v. Foret, 628 S.2d 1116, 1130 (La.1993).

Initially, we note Detective Nicaud was neither offered, nor accepted, as an expert witness in this case.  He indicated he had worked for the Slidell Police Department for twenty-two years and investigated the instant case.  He testified without objection that the demeanor of the victims' mother was "very soft spoken and consistent with a mother that just learned some, you know, devastating news, but she was a little apprehensive."  He also testified without objection that she was apprehensive, "just, you know, by what she spoke to me and me asking her questions as far as her culture, this is not something that is reported.  It is a disgrace and so, she was a little apprehensive and she even admitted herself that if the school

did not notify her and she had learned this information ahead of time she would have dealt with this in the family unit." In response to a State question if there were "other things" consistent with what you have found in your experience with child abuse, he replied, without objection, "[y]es. It was consistent." In response to a State question, "[i]f you had believed that the children were lying to you and that the mother had put them up to it, would you have obtained that arrest warrant?," he replied, without objection, "[n]o." In response to a State question, "[a]fter your interview with the defendant, did that change your mind in any way about the status of the case?," he replied, without objection, "[c]onfirmed it."

The defense cross-examined Detective Nicaud concerning why he had not interviewed the parents of the victims's mother. Detective Nicaud replied they were in Vietnam when the allegations were made. The defense asked Detective Nicaud if he had a phone number for the grandparents and, without objection, he replied:

> They would be home in about a month and I was very confident that what the girls said and what [the victims' mother] said that what they said happened, based on my investigation, the initial report from the officer and which is our protocol to do a forensic interview. We did a forensic interview. It was my understanding from my experience and my years of investigations on the Slidell Police Department I felt those girls were telling me one-hundred percent the truth.

The defendant failed to object to the challenged testimony. Accordingly, he failed to preserve the issue of Detective Nicaud's improper testimony, if any, for review. See La. C.E. art. 103(A)(1) ("Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and ... a timely objection ... appears of record, stating the specific ground of objection"); La. C. Cr. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence"). The grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error. See State v. Trahan, 93–1116, p. 16 (La. App. 1st Cir.5/20/94), 637 So.2d 694, 704.

This assignment of error is without merit.[21]

The Louisiana Supreme Court then denied Le's related writ application without assigning additional reasons.[22] See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision

---

[21] Le, 2013 WL 5935677, at *3-4; State Rec. Vol. 6 of 9.
[22] Le, 140 So. 3d at 724; State Rec. Vol. 9 of 9.

that does provide a relevant rationale ... then presume that the unexplained decision adopted the same reasoning.").

In this case, the Louisiana First Circuit relied upon La. Code Evid. art. 103(A)(1) and La. Code Crim. P. art. 841(A) to support its finding that Le's claim was not preserved for appellate review because he failed to lodge the required contemporaneous objections at trial.   Under La. Code Evid. art. 103(A)(1), an alleged error in an evidentiary ruling cannot be raised unless a substantial right of a party is affected and a timely objection is made at trial.   Similarly, under La. Code Crim. P. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."   The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review.   See Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).   It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review.   Wainwright v. Sykes, 433 U.S. 72, 87–88 (1977).   The ruling, therefore, was independent of federal law and relied strictly on state procedural requirements.   See Harris v. Reed, 489 U.S. 255, 263 (1989); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997).

The contemporaneous objection rule found in La. Code Evid. art. 103(A)(1) is regularly followed by the Louisiana courts to find that a post-verdict review of evidentiary challenges like that raised by Le are waived where no objection to the introduction of the evidence or the evidentiary ruling that was made at trial.   See, e.g., Babcock v. Martin, 289 So. 3d 606, 614 (La. App. 1st Cir. 2019) (failure to object to the admissibility and reliability of expert testimony waived the issue); State v. Esteve, 92 So. 3d 1058, 1061 (La. App. 1st Cir. 2012) (confrontation clause issue waived with no contemporaneous objection at trial); State ex rel. L.W., 40 So. 3d 1220, 1227 (La. App. 1st Cir.2010) (same); State v. Johnson, No.2007-KA-0634, 2007 WL 2713536, at *3

(La. App. 1st Cir. Sep. 19, 2007).  The bar imposed under La. Code Evid. art. 103(A)(1) is regularly and evenhandedly applied by the state courts, and is adequate to bar review of Le's claim.

The failure to preserve a claim under La. Code Crim. P. art. 841 has also been repeatedly recognized as an adequate state ground which bars review by the federal courts in a habeas corpus proceeding.  See Toney v. Cain, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (per curiam) (Table, Text in Westlaw); Proctor v. Butler, 831 F.2d 1251, 1253 (5th Cir. 1987); Riggins v. Butler, 705 F. Supp. 1205, 1208 (E.D. La. 1989); Marshall v. Cain, No. 04–219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation), aff'd, 247 F. App'x 555 (5th Cir. 2007), aff'd, 247 F. App'x 555 (5th Cir. 2007); accord Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright, 433 U.S. at 87–88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)).  The procedural bar under La. Code Crim. P. art. 841 is adequate to bar federal habeas review of Le's claim.

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, Le has not made either showing.

"To establish cause for a procedural default, there must be something *external* to the petitioner, *something that cannot fairly be attributed to him*."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (emphasis added; quotation marks omitted).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181,

1183 (5th Cir. 1992).  Le cites ineffective assistance of trial counsel as cause for his procedural default of this claim.  Ineffective assistance of counsel may in some circumstances serve as cause to overcome a procedural bar.  See Murray, 477 U.S. at 489 "(where an ineffective assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default)."  However, as will be discussed later in this report, Le's related claim of ineffective assistance of counsel is without merit and does not constitute cause for his default of claim one.  Romero, 961 F.2d at 1183; Bella v. Cain, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 F. App'x 352 (5th Cir. 2012).

Because the purported ineffectiveness of counsel cannot serve as cause for the default of this claim, and because Le has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").  The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43, 102 S.Ct. 1558).

Because Le has not met the "cause and prejudice" test, his claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime

for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted). However, the United

States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).  In the instant case, Le presents no new evidence

whatsoever in support of a contention that he is actually innocent.  Therefore, he has not

established that any miscarriage of justice will result from the application of the procedural bar.

Accordingly, for all of these reasons, Le's first claim is procedurally barred from federal

review.

## II.     Claim 2 – Admission of "Other Crimes" Evidence

Le claims that the trial court erred in admitting "other crimes" evidence and in failing to

provide a limiting instruction to the jury.  Le claims that the state elicited evidence that Le had

filed for bankruptcy, and that the trial court failed to instruct the jury regarding the limited use of

the evidence.

Le raised this issue on direct appeal.  The Louisiana First Circuit, in the last reasoned

opinion, found:

> In assignment of error number 2, the defendant argues the trial court erred in allowing the prosecution's presentation of "other crimes evidence" not previously ruled admissible and failed to provide a limiting instruction to the jury.

> It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character.  See La, C.E. art. 404(B)(1).  Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant.  However, the State may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and

relevant reason, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  La. C.E. art. 404(B)(1).  Upon request by the accused, the State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence.  Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense.  The State also bears the burden of proving that the defendant committed the other crimes, wrongs, or acts.  State v. Rose, 06–0402, p. 12 (La.2/22/07), 949 So.2d 1236, 1243.

Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree.  State v. Germain, 433 So.2d 110, 118 (La.1983).  As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.  Id.; see also Old Chief v. United States, 519 U.S ... 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").  Rose, 06–0402 at p. 13, 949 So.2d at 1244.

On direct examination, the defendant testified he treated the victims "just like my kid."  He claimed he moved them to Chalmette to provide them with better schools.  He also claimed he used money from damages to his house caused by Hurricane Katrina to have a house in Slidell so the victims could have a better education than if they lived in New Orleans.  On cross-examination, the State asked the defendant if he was having financial problems around the time of the allegations, and if he had ever had financial problems.  The defendant answered, "I never have bad money problems."  The State also asked the defendant if he had owned property in Jefferson Parish, and he replied, "[n]o."

On direct examination of the mother of the victims, the State asked if she was aware the defendant had declared bankruptcy.  The defense objected, arguing, "that has nothing to do with this case."  At a bench conference, the State indicated the defendant had testified he never had property on the west bank, never had problems with the property, and never in his life had money problems.  The defense questioned the relevance of the evidence.  The trial court ruled the evidence was not relevant to the particulars of the charge, but was relevant to the defendant's veracity, and noted the defense had failed to object when the defendant was questioned about whether he had any financial troubles.  Thereafter, the State asked the mother of the victims if it was true the defendant had declared bankruptcy.  She replied, "I don't recall that."  The State showed her a document supporting its claim and asked if the document reflected the defendant had declared bankruptcy, would she have any reason to doubt the document.  She replied, "[i]f that's what it says it is then it is."

11

Initially, we note evidence the defendant had filed for bankruptcy protection was not "other crimes evidence." Further, the trial court did not abuse its discretion in allowing the challenged evidence. The evidence was properly admitted to contradict the defendant's testimony that he "never [had] bad money problems." Except as otherwise provided by legislation, extrinsic evidence contradicting a witness's testimony is admissible when offered solely to attack the credibility of a witness, unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. La C.E. art. 607(D)(2).

We also note that the defense failed to request a limiting instruction concerning the challenged evidence. A party may not assign as error the failure to give a jury charge unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection. La. C. Cr. P. art. 801(C).

This assignment of error is without merit.[23]

The state asserts that Le's state-law claim is not cognizable on federal habeas review. The state, as Le concedes in his traverse,[24] is correct.

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). As Le is simply arguing that the state courts misapplied state evidence law, his second claim is not reviewable in this federal proceeding. See, e.g., Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

As stated, Le concedes that he did not federalize his claims. Even in his habeas application, Le only relies on Louisiana state law in support of his claim.[25] His state law claims, therefore, are not cognizable in this case.

---

[23] Le, 2013 WL 5935677, at *4-5; State Rec. Vol. 6 of 9.
[24] Rec. Doc. 21, p. 3.
[25] Rec. Doc. 1, pp. 14-15.

In any event, a state court decision denying such a claim could be the basis for federal habeas corpus relief only if the decision were "contrary to" or an "unreasonable application of" clearly established federal law.  See 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has never held that the admission of other "other crimes" evidence can serve as the basis for a due process violation.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (holding that when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law" (quotation marks and brackets omitted) ).  "Absent controlling Supreme Court precedent on the issue [of whether the admission of prior crimes evidence violates due process], the state courts' determination cannot be said to be contrary to, or an unreasonable application of, clearly established federal law."  Wallace v. Deville, No. 17-407, 2017 WL 2199024, at *16 (E.D. La. Apr. 26, 2017)), adopted, 2017 WL 2198957 (E.D. La. May 18, 2017).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law.  Le is not entitled to relief on this claim.

### III.      Claim 3 – Allen Charge

Le next claims that the trial court erred in providing the jury with a coercive Allen charge and forcing it to deliberate another three hours on the evening of Halloween when the jury advised that it was hung.

After approximately three hours of deliberation, the jury sent a note to the trial court indicating that it was hung.[26]  The trial court gave the jury a supplemental charge directing it to continue deliberations.[27]  Le's trial counsel objected to the charge after it was given.[28]  Defense

---

[26] State Rec. Vol. 3 of 9, Trial Transcript, 10/31/12, p. 538.
[27] Id.
[28] Id.

counsel subsequently raised the issue in a post-trial motion, which was denied.[29]  Le then raised

the claim on direct appeal.  The Louisiana First Circuit, in the last reasoned opinion, found as

follows:

## ALLEN CHARGE

In assignment of error number 3, the defendant argues the trial court erred
in providing an Allen charge to the jury when they advised they were deadlocked.

An Allen charge is an instruction acknowledged to be calculated to
dynamite jury deadlocks and achieve jury unanimity. State v. Nicholson, 315 So.2d
639, 641 (La. 1975).  Such a charge, and any coercive modification thereof, is
banned in the courts of Louisiana.  Id.  An Allen charge emphasizes that the jury
has a duty to decide the matter at hand, which implies that the trial judge will not
accept a mistrial in the case.  Additionally, when the duty to reach a verdict is
coupled with the trial court's admonition that those in the minority should
reconsider their position, there exists an almost overwhelming pressure to conform
to the majority's view.  State v. Washington, 93–2221, p. 11 (La. App. 1st
Cir.11/10/94), 646 So.2d 448, 454–55.

In the instant case, on October 31, 2012, at 1:03 p.m., the jury retired for
lunch and deliberation.  They returned to the courtroom at 2:25 p.m. and requested
transcripts of the forensic interviews, the letter that the victim of count one wrote
to her teacher, and a description of lesser charges.  The trial court advised the jury
they could not be provided with the requested transcripts or letter, but recharged
them on the lesser charges . The jury returned to the courtroom at 4:00 p.m. with a
note indicating they were "currently hung."

The trial court instructed them as follows:

I have indicated to counsel that your second note came out, it reading
currently hung, not disclosing the number you put, that's not appropriate for
me to do.  All I can ask you is it has been a few day[s] trial.  It is a serious
matter.  You went in around 1:00, you have had lunch, you have been at it
a few hours.  I would ask you to please go back and consult with one another
again, consider each other['s] views, discuss the evidence with the objective
of reaching a just verdict.  Again, of course, you have to decide the case for

---

[29] State Rec. Vol. 1 of 9, Motion for New Trial Pursuant to La. C.Cr.P. Art. 851(1), (2), (4) & (5) and Motion for Post
Judgment of Acquittal Pursuant to La. C.Cr.P. art. 821 B & C, 11/28/12; Memorandum in Support of Motion for New
Trial Pursuant to La. C.Cr.P. Art. 851(1), (2), (4) & (5) and Motion for Post Judgment of Acquittal Pursuant to La.
C.Cr.P. art. 821 B & C, 11/28/12; Sentencing Minutes, 11/28/12.

yourself, but you have to be open to a discussion with your fellow jurors with the objective of reaching a just verdict.

So, I ask you to please go back and give it another try.

Thank you.

The defense objected to the instruction, stating it was "close to an <u>Allen</u> charge," and the court noted the objection, but stated, "I don't believe it is anywhere near an <u>Allen</u> charge." Thereafter, the jury returned to the courtroom at 7:00 p.m. and returned a verdict.

The trial court did not give a prohibited <u>Allen</u> charge in this matter. The court did not admonish the minority members of the jury to reexamine the reasonableness of their opinion or adherence to their original convictions. Nor did the court state that it would not accept a mistrial. The charge does not appear coercive in its total context and does not rise to an <u>Allen/Nicholson</u> level. It was not so fundamentally unfair that it deprived the defendant of due process. The court merely recognized the jury had only been deliberating for a few hours and asked the jurors to consult with one another again, consider each other's views, and discuss the evidence with the objective of reaching a just verdict. Indeed, the note from the jury stated they were "currently hung," and thus, it was logical to conclude that further deliberations might result in their arriving at a verdict.

This assignment of error is without merit.[30]

The state claims that, to the extent that Le claims a violation of state law, his claim is not cognizable. It further claims that an <u>Allen</u> charge is expressly permitted under Supreme Court law, and, as a result, Le's claim is meritless. Le conceded in his traverse that he is not entitled to habeas relief as to this claim.[31]

A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011); <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990), and <u>West v. Johnson</u>, 92 F.3d 1385, 1404 (5th Cir. 1996)). "[I]t

---

[30] <u>Le</u>, 2013 WL 5935677, at *5-6; State Rec. Vol. 6 of 9.
[31] Rec. Doc. 21, p. 14.

is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68, 112 S.Ct. 475; see also Molo v. Johnson, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review). Thus, Le cannot be granted habeas relief based on his claim that the trial court violated state law in providing a supplemental charge.

To the extent that Le is arguing that the supplemental charge was so egregious as to violate federal law, his claim has no merit. An Allen charge refers to additional jury instructions given by the court when a jury is deadlocked. Allen v. United States, 164 U.S. 492 528 (1896). The use of such supplemental charges "has long been sanctioned" under federal law. Lowenfield v. Phelps, 484 U.S. 231, 237 (1988). To obtain federal habeas corpus relief based on such a charge, a petitioner "must establish that the court's charge, under the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair." Montoya v. Scott, 65 F.3d 405, 409 (5th Cir. 1995).

The charge in Le's case clearly did not rise to that level. The charge did not contain what has been termed "the most troublesome feature of the Allen charge," i.e. an "exhortation to the minority to reexamine its views in light of the majority's arguments." Id. at 409-10. In this case, no comments were directed specifically to the minority jurors. Further, such jurors were not prompted, much less coerced, to change their views to reach consensus. Moreover, the charge did not run afoul of federal law by stating or even implying that the jurors must reach a verdict. See Boyd v. Scott, 45 F.3d 876, 883-84 (5th Cir.1994). Here, the jurors, who had deliberated for a relatively brief period of time, were simply encouraged to continue deliberation. Such encouragement alone does not constitute impermissible coercion. Id. at 884. Further, the trial court did not give a deadline. Id. That the jurors perceived no such coercion is evidenced by the

fact that they deliberated for another three hours after the supplemental instruction was given.[32]
United States v. Eghobor, 812 F.3d 352, (5th Cir. 2015) (no other indicia of coercion was present
when the "jury did not rush to a decision after the charge was given, but instead continued to
deliberate for roughly four hours.") (citing United States v. Garcia,732 F.2d 1221, 1127 (5th Cir.
1984)).  Finally, while it was Halloween, there is no evidence that the jurors were concerned about
the holiday or that they requested a recess.  United States v.Montalvo, 495 F. App'x 391, 393 (5th
Cir. 2012).

The state courts' denial of relief on this claim was not contrary to or an unreasonable
application of federal law.  Le is not entitled to relief on this claim.

### IV.     Claim 4 - Non-Unanimous Jury Verdict

Le asserts that the non-unanimous jury verdict returned in his trial in 2012 was
unconstitutional based on the Supreme Court's decision in Ramos v. Louisiana, 140 S. Ct. 1390
(2020), wherein the United States Supreme Court held that a state jury must be unanimous to
convict a criminal defendant of a serious offense.  The state contends that the denial of relief by
the state courts was proper because there was no law compelling the use of a unanimous verdict
at the time of Le's conviction.

Le was convicted as charged on both counts of aggravated rape by a 10 to 2 verdict on
October 31, 2012.[33]  On appeal, the Louisiana First Circuit rejected Le's claim as follows:

### CONSTITUTIONALITY OF NON–UNANIMOUS VERDICTS

In assignment of error number 4, the defendant argues the proceedings were
defective because the jury returned less than unanimous verdicts.

---

[32] State Rec. Vol. 1 of 9, Trial Minutes, 10/31/12.
[33] State Rec. Vol. 1 of 9, Memorandum in Support of Motion for New Trial Pursuant to La. C.Cr.P. Art. 851(1), (2),
(4) & (5) and Motion for Post Judgment of Acquittal Pursuant to La. C.Cr.P. art. 821 B & C, 11/28/12.

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C. Cr. P. art. 851. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Maize, 94–0736, p. 28 (La. App. 1st Cir.5/5/95), 655 So.2d 500, 517, writ denied, 95–1894 (La.12/15/95), 664 So.2d 451.

Prior to sentencing, the defendant moved for a new trial, arguing, inter alia, his convictions by "10–2 verdict[s]" were inconsistent with our legal history and violated his Sixth Amendment and procedural due process rights. Following a hearing, the motion was denied.

There was no clear abuse of discretion in the denial of the motion for new trial. The provisions of La. Const. art. I, § 17(A) and La. C. Cr. P. art. 782(A) are constitutional and do not violate the Fifth, Sixth, and Fourteenth Amendments, State v. Bertrand, 08-2215 and 08-2311, p. 8 (La. 3/17/09), 6 So.3d 738, 743; State v. Jones, 09-0751, p. 11 (La. App. 1st Cir.10/23/09), 29 So.3d 533, 540. There is no authority to the contrary. Accordingly, the trial court was not, and we are not, at liberty to ignore the controlling jurisprudence of superior courts on this issue. See Bertrand, 08-2215 and 08-2311 at p. 8, 6 So.3d at 743.

This assignment of error is without merit.[34]

The Louisiana Supreme Court denied Le's related writ application without reasons.[35]

Le's challenge to the constitutionality of his verdict and Louisiana law on non-unanimous jury verdicts presents a pure question of law. Ortiz v. Quarterman, 504 F.3d 492, 496 (5th Cir. 2007). Thus, Le may obtain federal habeas corpus relief only if the state courts' decision was contrary or, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The AEDPA deferential standard requires this Court to apply law that was clearly established "at the time the conviction becomes final." Peterson v. Cain, 302 F.3d 508, 511 (5th Cir. 2002) (citing Williams, 529 U.S. 380-81). Le's conviction was final on August 21, 2014, when he did not file an application for writ of certiorari with the United States Supreme Court

---

[34] Le, 2013 WL 5935677, at *6; State Rec. Vol. 6 of 9.
[35] Le, 140 So. 3d at 724; State Rec. Vol. 9 of 9.

within ninety (90) days after the Louisiana Supreme Court denied his post-appeal writ application on May 23, 2014.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  At that time, the clearly established United States Supreme Court precedent applicable to Le's claim was directly contrary to his argument.

In Apodaca v. Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws, including Louisiana's law, that permitted criminal defendants to be convicted by less than unanimous jury votes.  While the Supreme Court itself has described the Apodaca/Johnson holding as "the result of an unusual division among the Justices," it also made clear at that time that "although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials."  McDonald v. City of Chicago, 561 U.S. 742, 765 n.14 (2010) (citing Apodaca, 406 U.S. at 404 and Johnson, 406 U.S. at 356).

In the habeas corpus context, the United States Fifth Circuit Court of Appeals previously recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury must be rejected under Apodaca/Johnson "because the Supreme Court 'has not held that the Constitution imposes a jury unanimity requirement.' "  Hoover v. Johnson, 193 F.3d 366, 369 (5th Cir. 1999) (quoting Richardson v. United States, 526 U.S. 813, 821 (1999) and citing Johnson, 406 U.S. at 366).  Thus, at the time of Le's conviction, the use of the non-unanimous verdict rule by the Louisiana court was not contrary or an unreasonable application of clearly established Supreme Court precedent existing at the time.

Le argues that, in 2017, following the finality of Le's conviction, the United States Supreme Court issued Ramos, 140 S. Ct. at 1407, finding that unanimity in jury verdicts is required under Sixth Amendment.  However, as recognized by the state, on May 17, 2021, the Supreme

Court also held in Edwards v. Vannoy, 141 S. Ct. 1547 (2021), that "Ramos announced a new rule of criminal procedure" that "does not apply retroactively on federal collateral review." Id. at 1562. The Ramos decision, therefore, did not alter the application of the Supreme Court precedent existing at the time of Le's conviction under AEDPA review.   See United States v. Lopez-Velasquez, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue.") (citing United States v. Short, 181 F.3d 620, 624 (5th Cir. 1999), and Ellis v. Collins, 956 F.2d 76, 79 (5th Cir. 1992)).

In 2018, Louisiana voters approved an amendment to Article I, Section 17(A) of the Louisiana Constitution, to require unanimous jury verdicts in cases like this one.  The state constitutional amendment, however, is expressly limited to offenses "committed on or after January 1, 2019."  Accordingly, it does not apply retroactively to Le's 2014 conviction.

For the foregoing reasons, based upon the applicable law at the time of the conviction and currently, the state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law.  Consequently, Le is not afforded  federal habeas corpus relief on this claim.

### V.      Claim Five – Ineffective Assistance of Counsel

Le claims ineffective assistance of trial counsel.  He specifically claims his counsel was ineffective in failing to object when the prosecution elicited the opinions of Detective Brian Nicaud and guidance counselor Denise Matherne.  He also claims that his counsel was ineffective in failing to request a Daubert hearing.  He further claims that his trial counsel was ineffective in failing to request a limiting instruction.

Le raised these claims in his application for post-conviction relief.  The state district court found:

A review of the trial transcript shows that defense counsel, during opening and closing statements, attacked the credibility of Detective Nicaud, by painting a picture that Detective Nicaud, after hearing the allegations against defendant, made a determination in the beginning of the investigation that defendant committed the crimes and failed to following [sic] up on anything the defendant told him. Therefore, defense counsel's decision not to object to the testimony may be considered a reasonable trial strategy because it supported the defendant's theory of the case. Because it "might be considered trial strategy," Strickland, 466 U.S. 689, the petitioner has failed to demonstrate that trial counsel performed deficiently by failing to object to that testimony.

The Court points out that petitioner has also failed to demonstrate that had his counsel made these objections, the would have been meritorious. Jurisprudence on this issue has allowed lay witnesses to opine whether or not they believe a particular individual's statement is credible, as long as those opinions are rationally based upon first-hand perceptions. State v. Carter, 10-0614, p. 12-13 (La. 1/24/12), 84 So. 3d 499, 512-512; State v. Hubbard, 97-0916 (La. App. 5 Cir. 1/29/98), 708 So. 2d 1099, 1106. Therefore, the petitioner has failed to provide any prejudice.

Petitioner asserts that even though Detective Nicaud was not tendered as an expert, because of Nicaud's position as a law enforcement officer he was given a "high level of credibility" by the jury which prejudiced the petition. The Court notes that the jury was instructed on the law as it relates to the testimony of "witnesses." The jury was specifically instructed regarding evaluating the credibility of witnesses and the weight to be given to the witnesses testimony as follows: "In your evaluation you should carefully scrutinize the circumstances under which the witness has testified. You may consider a witness' ability and opportunity to observe and remember the facts, his or her manner while testifying, and any bias or prejudice inherent in their testimony." ("Jury Instructions", Record Appeal, pp. 513-514). Detective Nicaud was not an expert witness, but an investigating officer on the case who provided testimony based on his personal observations. The petitioner has failed to demonstrate any prejudice.

The petitioner also alleges that his counsel was ineffective because he failed to request a limiting instruction concerning the admission of "bad character evidence", specifically that defendant had previously filed for bankruptcy. During cross-examination of the defendant, the prosecutor asked whether the defendant ever had any "money problems", and the defendant answered "Never". (Record on Appeal at 455:16-455:21) The prosecution then presented evidence that the defendant had previously filed for bankruptcy. The defendant's objection to this evidence was overruled by the Court because, although not relevant to the particulars of the charge, it was relevant to the defendant's veracity.

On appeal, the First Circuit Court of Appeal noted in its decision that "evidence the defendant had filed for bankruptcy protection was not 'other crimes evidence.' Further, the trial court did not abuse its discretion in allowing the

21

challenged evidence.   The evidence was properly admitted to contradict the defendant's testimony that he 'never (had) bad money problems.'"

The petitioner claims that it was error for the court to fail to provide a limiting instruction to the jury after the admission of other crimes evidence, and that his counsel should have asked the court to instruct the jury "that they could not infer Le's guilt due to the bankruptcy."  As the Court of Appeal noted in affirming the defendant's conviction, evidence that the defendant had previously filed for bankruptcy was not other crimes evidence.  It was properly admitted to contradict the defendant's testimony that he had never had money problems.  Extrinsic evidence contradicting a witness' testimony is admissible when offered solely to attack the credibility of a witness. La. C.E. art. 607(D)(2).  Credibility of witnesses was a crucial issue in defendant's case.  The jury was instructed sufficiently on the law.  This claim is denied.

As to petitioner's claim of ineffective assistance of counsel on this issue, the Court finds that petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms or that counsel's performance prejudiced defendant to the extent that the trial was rendered unfair or the verdict suspect.  Therefore, the Court finds this claim to be without merit and is denied.[36]

With regard to his claim of ineffective assistance of counsel in failing to request a <u>Daubert</u>

hearing, the state district court found:

In petitioner's "Supplemental Application for Post-Conviction Relief" he alleges that the trial court erred in allowing Ms. Denise Matherne to testify as an expert witness for the State because her trial testimony was not reliable under the factors set forth in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and subsequent jurisprudence. Petitioner cites many medical article relating to psychology, child sexual abuse, sexual behavior in children and forensic examinations, as well as case law from other jurisdictions.  However, none of the medical article or jurisprudence cited by petitioner can be construed as the discovery of new facts or a new interpretation of constitutional law that would warrant the granting of a new trial.

Further, defendant's reliance on the case of <u>State v. Ayo</u>, 167 So. 3d 608 (La. 6/30/15) is also misplaced, as the facts of that case are distinguishable from the facts of petitioner's case.  In <u>Ayo</u>, the Court found that previously undisclosed pre-trial statements to witnesses by he victim that were inconsistent with statements she gave at trial constituted newly discovered evidence.  There is no newly discovered evidence in petitioner's case.  The Court also points out that petitioner

---

[36] State Rec. Vol. 6 of 9, Reasons for Denying Application and Supplemental Application for Post-Conviction Relief, 5/4/17, at pp. 2-4.

had the opportunity prior to trial to request a <u>Daubert</u> hearing regarding the admissibility of Denise Matherne's testimony, and further did not raise this issue as error on appeal.  This claim is denied.

Petitioner also raises the issue that his counsel was ineffective because he failed to object to the admissibility of Ms. Matherne's testimony.  The Court finds that his allegation made by petitioner is conclusory and speculative, and petitioner has not made the requisite showing that had his counsel objected to the admissibility of Ms. Matherne's testimony or requested a <u>Daubert</u> hearing, that the outcome would have been meritorious of would have changed the outcome of trial. Therefore, this claim has no merit and is denied.[37]

The Louisiana Supreme Court found Le failed to show he received ineffective assistance of counsel under the standard of <u>Strickland</u>.[38]

The United States Supreme Court has established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief is required to show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th

---

[37] <u>Id.</u>, at pp. 5-6.
[38] <u>Le</u>, 263 So. 3d at 422; State Rec. Vol. 9 of 9.

Cir. 1998). Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation . See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthewson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because Le's ineffective assistance of counsel claims were denied on the merits, and because such a claim presents a mixed question of law and fact, Le is entitled to federal habeas relief on the claim only if he shows that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a

Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

25

Id. at 105 (emphasis added; citations omitted).  Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to any aspect of Le's ineffective assistance of counsel claims.

### A.     Failure to Object to Opinion Testimony from Detective Nicaud

First, Le asserts that his counsel was ineffective in failing to object to opinion testimony from Detective Nicaud.

Detective Nicaud testified that he interviewed the victims' mother who he described as soft spoken and appearing to be apprehensive.[39]  He described her demeanor as "consistent with a mother that just learned some … devastating news."[40]  Nicaud testified that he learned from the victims' mother that sexual assault is not something that is reported in her culture, and that had she learned of it at home, they would have dealt with it in the family unit.[41]  Nicaud testified that he watched the victims' interviews and that there were no inconsistencies.[42]  He testified that he would not have obtained an arrest warrant for Le had he believed that the victims were lying.[43] Nicaud testified that his interview with Le confirmed what he thought about the case.[44]  On cross-examination, in explaining why he did not interview the grandparents, who were in Vietnam at the

---

[39] State Rec. Vol. 3 of 9, Trial Transcript, 10/30/12, at p. 336.
[40] Id.
[41] Id.at pp. 336-37.
[42] Id., at p. 339.
[43] Id.
[44] Id., at p. 340.

time of the investigation, Nicaud stated that he was confident in the victims' statements.[45]  He

explained:

> I was very confident that what the girls said and what [the victims' mother] said
> that what they said happened, based on my investigation, the initial report from the
> officer and which is our protocol to do a forensic interview.  We did a forensic
> interview.  It was my understanding from my experience and my years of
> investigation on the Slidell Police Department I felt those girls were telling me one-
> hundred percent the truth.[46]

On redirect, Nicaud testified that he was not convinced by Le's denial of the victims' allegations.[47]

Nicaud was not offered as an expert witness.  The Fifth Circuit has observed that "the

distinction between lay and expert witness testimony is that lay testimony 'results from a process

of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning

which can be mastered only by specialists in the field.' "  United States v. Ebron, 683 F.3d 105,

136-37 (5th Cir. 2012) (citations omitted).  "A witness who provides only lay testimony may give

limited opinions that are based on the witness's perception and that are helpful in understanding

the testimony or in determining a fact in issue, but the witness may not opine based on scientific,

technical, or other specialized knowledge."  United States v. McMillan, 600 F.3d 434, 456 (5th

Cir. 2010).  Nicaud's opinion was not based on scientific, technical or specialized knowledge.

Therefore, trial counsel did not have a basis to object to his testimony.  Counsel are not required

to make frivolous or futile objections.  Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990); Clark,

19 F.3d at 966 ("Failure to raise meritless objections is not ineffective lawyering; it is the very

opposite.").

Further, as noted by the state district court, defense counsel attacked the investigation of

the case as well as Detective Nicaud's credibility in both his opening statement and closing

---

[45] Id., at p. 351.
[46] Id., at p. 352.
[47] Id., at p. 364-65.

argument.[48]  He argued that investigators automatically believed the victims.[49]  He argued that Detective Nicaud failed to interview the grandmother and get a search warrant to seize Le's computer to determine if there was child pornography on it.[50]  He pointed out the inconsistencies in the victims' interviews.[51]  Defense counsel claimed that the police failed to do its job and follow the evidence.[52]  The basis of the defense was that Nicaud chose to simply believe the victims and did not adequately investigate the case.  "Given the almost infinite variety of possible trial techniques and tactics available to counsel, [the court] is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir.1993).

Here, Le has not shown that his trial counsel's representation fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's failure to object to Nicaud's testimony, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law.  Le is not entitled to federal habeas corpus relief on this claim.

**B.**   **Failure to Object to Matherne's Testimony and Move for a Daubert Hearing**

Le next claims his counsel was ineffective for failing to object to Matherne's opinion testimony regarding the credibility of the victims' accusations.  He further claims that his counsel was ineffective in failing to request a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

---

[48] State Rec. Vol. 3 of 9, Trial Transcript, 10/30/12, at pp. 326-28; Trial Transcript, 10/31/12, at pp. 492-.
[49] Id., at pp. 326-27; Trial Transcript, 10/31/12, at pp. 492-93.
[50] State Rec. Vol. 3 of 9, Trial Transcript, 10/31/12, at pp. 492-93.
[51] Id., at p. 495.
[52] Id., at p. 498.

Denise Matherne, the school counselor at the victims' school, testified regarding her education and employment.  Matherne testified that she was a licensed professional counsel and a state certified school counselor with a Master's Degree from Loyola University.[53]  She previously worked with children who have gone through various trauma as a clinical therapist at Hope Haven Center.[54]  She also previously worked as a licensed therapist at Uptown Mental Health Center.[55]  Matherne explained that she provided mental health therapy for persons with a history of depression, anxiety, abuse, and/or trauma.[56]  Matherne testified that she had treated child sexual abuse victims in the past.[57]

Notably, defense counsel in fact objected when the state offered Matherne as a licensed professional counselor.[58]  After defense counsel cross-examined Matherne regarding her qualifications, the trial court accepted Matherne as tendered.[59]  The fact that counsel was not successful in contesting Matherne's expert status does not render counsel ineffective.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Matherne testified that N.N.V.'s teacher provided her a note in the victim's handwriting that alleged she had been raped.[60]  Matherne spoke with N.N.V., who Matherne described as timid, fearful and resistant.[61]  As a result of N.N.V.'s disclosure, Matherne met with her mother.[62]  N.N.V., who appeared nervous and afraid of her mother's reaction, disclosed the information to

---

[53] State Rec. Vol. 3 of 9, Trial Transcript, 10/30/12, at pp. 408, 411, 414.
[54] Id., at p. 409.
[55] Id., at p. 411.
[56] Id., at p. 413.
[57] Id., at p. 414.
[58] Id., at p. 412.
[59] Id., at pp. 412-14.
[60] Id., at p. 409.
[61] Id., at p. 410.
[62] Id., at p. 415.

her mother.[63]  Matherne recalled that the mother was very concerned and worried, frightened, and appeared to be shocked.[64]  Matherne testified that the mother teared up and became pale and her voice was shaky.[65]  Matherne explained that she later reviewed the victims' medical records, which included extremely graphic disclosures, which upset Matherne.[66]  Matherne testified that she had provided counseling to both victims since the disclosure and at no point did either victim recant their claims.[67]  Matherne testified that N.D.V. picks and scratches her own body and Matherne had seen similar behavior in other sexual abuse cases.[68]  She opined that both victims needed counseling as a result of the claimed sexual abuse.[69]

On cross-examination, Matherne testified that anxiety could cause a person to self-harm.[70] She further testified she did not know if N.D.V. self-harmed before the allegations of sexual abuse, and that, in order to determine whether the self-harming was potentially related to sexual abuse, she would need to know whether the onset of the self-inflected wounds occurred prior to the sexual abuse.[71]

In Daubert, the United States Supreme Court supplanted the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" to ensure the relevance and reliability of scientific expert testimony.  Daubert, 509 U.S. at 592.  Once expert testimony is admitted at trial, it is for the jury to resolve the credibility and the reliability of the expert's testimony.  " '[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be

---

[63] Id.,

[64] Id., at p. 416.

[65] Id.,

[66] Id., at pp. 416-17.

[67] Id., at p. 418-19, 421-22.

[68] Id., at 419.

[69] Id.

[70] Id., at p. 420.

[71] Id., at pp. 420-21.

left for the jury's consideration.' " Primrose Operating Co. v. Natl. American Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United State v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996) ).  The Louisiana Supreme Court has adopted the Daubert analysis only in instances where the methodology used by an expert is being questioned.  State v. Foret, 628 So. 2d 1116, 1121, 1123 (La. 1993); see also Dinett v. Lakeside Hospital, 811 So. 2d 116, 119 (La. App. 4th Cir. 2002).

In this case, Matherne primarily testified as a fact witness because of her meetings with and observation of the victims after their disclosures.  She testified about how she learned about the accusations and the demeanor of N.N.V. and her mother.  Her methodology was not at issue.  Counsel is not ineffective for electing not to pursue a futile Daubert motion.  See Shields v. Dretke, 122 F. App'x 133, 153 (5th Cir. 2005); see also Flick v. Warren, 465 F. App'x 461, 465 (6th Cir. 2012).  Further, Matherne's testimony relating to the demeanor of N.N.V. and her mother was based upon her observations.  Therefore, there was no basis to object.

With regard to Matherne's testimony that N.D.V.'s self-inflicted wounds could be consistent with sexual abuse and her testimony that she was not aware of any evidence inconsistent with sexual abuse, La. Code Evid. art. 704 bars an expert witness from expressing an opinion as to the guilt or innocence of the accused.  The article also states that "[t]estimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact."  Id. Nonetheless, an expert's opinion regarding the victim's credibility is improper.  Foret, 620 So.2d at 1130.

Here, Matherne did not expressly state that the victims were credible.  In any event, to the extent that her testimony improperly bolstered the victims' credibility, Le has failed to show prejudice resulting from his counsel's failure to object to the testimony.  There was other evidence to establish Le's guilt beyond a reasonable doubt.  The jury saw the video recorded interviews of

the victims with forensic interviewer Jo Beth Rickles.[72]  The transcripts of the interviews of the victims with a forensic nurse at Children's Hospital were also admitted into evidence.[73]  N.D.V. testified that she did not lie when she gave her video recorded interviewed and explained that she had been raped.[74]  She specifically testified that Le licked her vagina and put his hand in her vagina.[75]  N.N.V. testified that she did not lie when she was interviewed by Rickles.[76]  She explained that on one occasion she awoke with her shorts missing and Le on top of her.[77]  N.N.V. explained that she wrote a note to her fifth grader teacher telling her what Le did.[78]  She testified that she was mad at Matherne because she did not want her to tell her mother about the incident.[79]  She testified that she was telling the jury the truth.[80]  The victims' mother testified that both victims were in counseling.[81]

Accordingly, for the reasons expressed, Le not demonstrated that trial counsel's performance was deficient or that he was prejudiced.  He is not entitled to federal habeas relief on this claim.

### C.    Failure to Request a Limiting Instruction

Finally, Le claims that his trial counsel was ineffective when he failed to request that a limiting instruction be given to the jury related to the "other crimes" evidence presented by the state.  He specifically claims that his counsel should have requested a limiting instruction when the state presented evidence that Le had previously filed for bankruptcy.

---

[72] State Rec. Vol. 3 of 6, Trial Transcript, 10/30/12, at pp. 334-35.
[73] Id., at pp. 358-59.
[74] Id., at pp. 367-68, 374.
[75] Id., at pp. 368-69, 376.
[76] Id., at pp. 358
[77] Id., at p. 379.
[78] Id., at p. 381.
[79] Id., at pp. 381-83.
[80] Id., at p. 388.
[81] Id., at p. 389

Le testified that he had never had money problems and that he never owned property in Jefferson Parish.[82]  Tuyen Nguyen, Le's girlfriend of eleven years and mother of three of his children, testified that she did not recall Le declaring bankruptcy.[83]  After the state showed her a document supporting its claim, Nguyen replied, "if that's what it says it is then it is."[84]  Le's sister testified that Le had to declare bankruptcy because he "had to take all those money out to help pay for her stuff."[85]  She, however, admitted that Le was discharged from his debt before he met the victims' mother.[86]

Initially, Le fails to show that a limiting instruction was warranted.  The Louisiana First Circuit found that the testimony regarding bankruptcy was not "other crimes" evidence.[87]  As the testimony did not constitute "other crimes' evidence, defense counsel did not act deficiently in failing to request a limiting instruction.  Page v. Cain, Civ. Action No. 12-2151, 2013 WL 5774712, at *14 (E.D. La. Oct. 24, 2013) (failure to request a limiting instruction was not ineffective assistance where testimony was not evidence of "other crimes").

Even if counsel's failure to request a specific limiting instruction in this instance could be considered deficient performance, Le's claim fails on the prejudice prong of the Strickland analysis.  "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  In assessing prejudice, courts must consider the totality of the evidence before the judge or jury." Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (citation omitted); accord Thomas v. Vannoy, 651 F. App'x 298, 301 (5th Cir. 2016) (noting that the prejudice "inquiry necessarily

---

[82] State Rec. Vol. 3 of 9, Trial Transcript, 10/31/12, at p. 455.
[83] Id., at pp. 461-62, 468.
[84] Id., at p. 468.
[85] Id., at p. 474.
[86] Id., at p. 475.
[87] Le, 2013, WL 5935677, at *5; State Rec. Vol. 6 of 9.

examines the strength of the other evidence in the case weighed against the egregiousness of counsel's error"). Accordingly, if "it was not reasonably likely that the instruction would have made any difference in light of all the other evidence of guilt," then there is no basis for finding that <u>Strickland</u> prejudice resulted from counsel's failure to request the limiting instruction. <u>Thompkins</u>, 560 U.S. at 390. In this case, considering the totality and strength of the evidence separate and apart from the evidence that Le had declared bankruptcy, as previously discussed, the state-court determination under <u>Strickland</u> was proper. Therefore, the state court reasonably determined that counsel's failure to request a specific limiting instruction relating to the evidence to Le had declared bankruptcy did not prejudice Le.

For the forgoing reasons, the state courts' denial of relief on Le's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief as to these claims.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Tam Q. Le be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[88]

      New Orleans, Louisiana, this __6th__ day of October, 2022.

                                     _____

                                       **DANA M. DOUGLAS**
                                       **UNITED STATES MAGISTRATE JUDGE**

---

[88] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.